ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of
    SABRINA YOHANNES

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUL 1 7 2007

---

SABRINA YOHANNES,

                Appellant,

   -against-

DEBELL RESIDENTIAL LLC,

                Appellee.

No. 06 Civ. 461 (LTS)

---

### MEMORANDUM ORDER AND OPINION

Appellant Sabrina Yohannes ("Appellant" or "Yohannes"), the debtor in a Chapter 13 case in the United States Bankruptcy Court for the Southern District of New York, appeals from a decision of that Court (Drain, J.) denying her motion to rescind her July 28, 2005, settlement agreement with DeBell Residential, LLC ("Appellee" or "DeBell"). Appellant asserts that the settlement agreement was unconscionable and was obtained through misrepresentation and undue influence. The Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(a)(1), and has reviewed thoroughly the parties submissions and arguments. For the reasons that follow, the Bankruptcy Court's decision is affirmed.

### BACKGROUND

On July 29, 2004, the Appellant filed for Chapter 13 bankruptcy protection. As of the filing date, DeBell had two independent claims against Yohannes. The first was based on a

Copies mailed to Appellant + left for her at¹ Pro Se Chambers of Judge Swain Office + picked up by Appellee

judgment of foreclosure and sale entered by the Supreme Court of the State of New York (and affirmed by the Appellate Division) on August 4, 2003 (the "Foreclosure Judgment"). The Foreclosure Judgment was based on approximately 10 years of nonpayment of common charges for a studio apartment located at 209 West 104th Street (the "property"). As of the bankruptcy filing date, the amount due on the Foreclosure Judgment was approximately $41,063.32, plus $14,369.00 in legal fees. DeBell's second claim arose from a note and mortgage (the "Mortgage") initially entered into between Yohannes and Citibank, DeBell's predecessor in interest. Mortgage payments were not made on the Mortgage for approximately 10 years and, as of the bankruptcy filing date, DeBell estimated that $201,375.00 was due on the Mortgage.

Twenty minutes after Appellant filed her Chapter 13 petition, the property was sold at a foreclosure sale, and DeBell was the successful bidder with a purchase price of $196,000.00. DeBell concedes that the sale was void, as it was effected after the order for relief had been entered and the 11 U.S.C. § 362 automatic stay had arisen. DeBell moved to annul the automatic stay, arguing that Yohannes was not in a position to confirm a Chapter 13 plan and was failing to comply with her Chapter 13 obligations. DeBell then made a motion to dismiss Yohannes' case. The Chapter 13 Trustee also made two dismissal motions. The Bankruptcy Judge repeatedly adjourned these motions to enable Yohannes to find employment and otherwise comply with her Chapter 13 obligations.

Yohannes, who was represented by counsel throughout the bankruptcy proceedings, subsequently made a motion to expunge DeBell's Mortgage, arguing that enforcement of it was barred by the relevant statute of limitations. DeBell argued in opposition that, even if this was the case, it intended to appeal the dismissal of a prior Mortgage foreclosure action, which would reinstate the limitations period and moot the argument made in the motion. At a June 23, 2005,

hearing on the motion to expunge, the Bankruptcy Court lifted the automatic stay to enable DeBell to prosecute an appeal from the dismissed Mortgage foreclosure action in the Appellate Division, and deferred further consideration of the motion to expunge until after the outcome of that appeal. The Court also adjourned the outstanding motions to dismiss and to annul the automatic stay to July 28, 2005.

Just before this July 28, 2005 conference, Yohannes (along with her counsel) and DeBell entered into a settlement agreement in the hallway of the Bankruptcy Court. After allowing the parties to present the settlement agreement to him, Judge Drain approved the agreement, subject only to third party objections raised after notice, of which there were none. On September 7, 2005, Yohannes filed an objection to the Settlement Agreement, and a hearing on the issue was held on September 8, 2005, where Yohannes was present with her counsel. The objection and the hearing both focused on the issue of payment of common charges that had previously been assigned, and was apparently resolved to the parties' satisfaction.

On October 11, 2005, Yohannes filed a motion to rescind the settlement agreement, arguing that it was unconscionable and obtained through misrepresentation. The Bankruptcy Court held a hearing on this motion on November 17, 2005, where Judge Drain indicated that given the risks both parties were facing on the date of the agreement, he believed the settlement to be fair and reasonable. Judge Drain noted that, "[i]t was an amount that was entered into on an adequately informed basis. Based on my review of DeBell's claims and DeBell's position in the case, it is not an unconscionable amount. And, in my view, it is an appropriate settlement." (Transcript of November 17, 2005 Bankruptcy Court Conference, 56.)

Yohannes filed this appeal, and also sought a stay of the Bankruptcy Court's Order pending the resolution of her appeal, which stay was granted by the Second Circuit after being

denied by this Court.

## DISCUSSION

A district court hearing an appeal from a bankruptcy court reviews the bankruptcy court's findings of fact under the "clearly erroneous" standard, see Fed. R. Bankr. P. 8013, while its conclusions of law are reviewed under the de novo standard.  See In re Bennett Funding Group, Inc., 146 F.3d 136, 137 (2d Cir. 1998).

"A stipulation of settlement on the record in Court is one of the strongest and most binding agreements in the field of the law." In re Cuffee, 232 B.R. 53, 56 (E.D.N.Y. 1999), aff'd 201 F.3d 430 (2d Cir. 1999).  Appellant makes two primary arguments to support her contention that the Bankruptcy Court erred in denying her motion to rescind the settlement agreement.  First, she claims that the settlement agreement itself was unconscionable.  Second, she argues that the settlement agreement was obtained through misrepresentation and undue influence.

### Unconscionability

The thrust of Appellant's unconscionability argument is that the mortgage which DeBell holds on her apartment is unenforceable due to an expired statute of limitations, and that the $120,000.00 settlement agreement she entered into with DeBell is accordingly unconscionable, as "[n]o reasonable person would pay $120,000.00 to a creditor whose only enforceable claim is $29,000.00 plus interest and costs." (Appellant's Brief 7.)  Appellant argues that DeBell had conceded on the record of a June 23, 2005, Bankruptcy Court hearing that it was barred from collecting on the mortgage by statute and that Judge Drain forgot about this concession in ruling on Appellant's motion to rescind.  (Id. 9.)

Unconscionability "requires some showing of 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " State v. Avco Financial Service, Inc., 50 N.Y.2d 383, 389 (1980) (quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965)). An unconscionable agreement has been described as one "such as no [person] in [her] senses and not under delusion would make on the one hand, and as no honest and fair [person] would accept on the other," where the resulting inequality is "so strong and manifest as to shock the conscience and confound the judgment of any [person] of common sense." Christian v. Christian, 42 N.Y.2d 63, 71 (1977) (citations omitted).

The Court first notes that it is clear from the transcript of the November 17, 2005 hearing where Judge Drain considered Appellant's motion to rescind that he was aware of the issue of the unclear status of Appellant's mortgage, and that he considered this one of the "risks" both parties were facing when they chose to settle. In response to Yohannes' argument that only $40,000.00 of the debt was enforceable, Judge Drain noted that "[t]hat was a very live issue at the time and an issue that was eminently settleable." (Tr. of November 17, 2005 Hearing, 58.) He expressly rejected Appellant's argument that he had formerly ruled that the mortgage was not enforceable, and noted that it was a matter that was well known to both Appellant and to her counsel. (Id. 58-59.) He concluded that the issue had "been briefed and this settlement was entered into with full knowledge of that issue." (Id. 62.)

Judge Drain clearly held that the settlement agreement "was an amount that was entered into on an adequately informed basis, and that based on his review of DeBell's claims and DeBell's position in the case, it was "not an unconscionable amount" and was "an appropriate settlement." (Id. 56.) Judge Drain went on to hold that although Appellant may now regret entering

into the agreement, he did not believe that it was "entered into in such an extreme condition, or in and of itself, represents such an extreme imposition upon [the Appellant], in light of DeBell's rights, that it is unconscionable." (Id.) He noted that there was no discussion during the settlement conference about the settlement amount being too high. (Id.) He concluded that there were "no grounds to rescind the agreement because it [was] a proper settlement."

The Court notes that the transcript of the June 23, 2005, hearing in which Judge Drain lifted the automatic stay to enable DeBell to prosecute an appeal from the dismissed Mortgage foreclosure action in the Appellate Division corroborates his finding that the issue was a live and uncertain one at the time of the settlement. See June 23, 2005 Bankruptcy Court Transcript, 9-12. As Judge Drain properly recognized, the appeal of the mortgage action could have gone either way, and he recognized it as "totally a state law issue" which would be "properly determined by the state court." (Id. 10.) During the November hearing on Appellant's motion to rescind, Judge Drain noted that, at the time the Appellant entered into the settlement agreement, she was "still at risk for all of the amounts that she owed DeBell," and that this amount was "more than $40,000.00." (November 17, 2005 Tr. 59.)

In holding that the settlement agreement was not unconscionable, Judge Drain clearly held that the settlement terms were not unreasonably favorable to DeBell, and that the Appellant did not face an absence of meaningful choice in entering into the agreement. Reviewing Judge Drain's findings of fact and conclusions of law regarding the unconscionability of the settlement agreement under the clearly erroneous and de novo standards, respectively, the Court finds no error and affirms these findings and conclusions.

Misrepresentation/Undue Influence

Appellant argues that she was unduly influenced by both her attorney[1] and also DeBell. She argues that her attorney's actions, including allegedly failing to inform her of certain court requests, making Appellant do the work of the attorney, and failure to prepare, "placed profound pressure anxiety and duress on [Appellant] and . . . harmed her position before both DeBell and the Court." (Appellant's Brief 7.) Appellant argues that DeBell "provided contradictory statements . . . and misled" her. (Id.)

"Under New York law, a party claiming that it was unduly influenced to enter a contractual relationship must prove that it contracted under circumstances indicating that a 'relationship of control' existed and that the 'stronger' of the two parties had exerted influence over the other to 'destroy the weaker party's free will and substitute for it the will of the [other].'" Sun Forest Corp. v. Shvili, 152 F. Supp. 2d 367, 393 (S.D.N.Y. 2001) (internal citations omitted). This is a substantial burden for a party to meet. Essentially, "a party seeking to invalidate a contract must demonstrate that it was manipulated into signing a contract as a consequence of conduct worse than 'even pressure, no matter how bad' because 'undue influence is tantamount to a species of cheating.'" Id. (internal citation omitted). Finally, and importantly to this action, "a court considering an undue influence defense must find that there was an 'advantage sought and obtained for the actor or another in whom he [or she] has an interest.'" Id. (internal citation omitted).

To the extent the Appellant is also arguing duress, as she at times uses that word in her brief although she does not delineate it as one of the grounds for relief in her statement of the

---

[1] To the extent that a claim of ineffective assistance of counsel is implicit in Appellant's arguments, it is not meritorious, as there is no 6th Amendment right to effective assistance of counsel in civil cases. See U.S. v. Coven, 662 F.2d 162, 176 (2d Cir. 1981).

issues on appeal (see Appellant's Brief 5), the burden she faces is even greater. A defendant claiming that she was induced to enter a contract as a result of duress must show: (1) a threat, (2) unlawfully made, (3) which caused involuntary acceptance of contractual terms, (4) because the circumstances permitted no alternative. See Mathias v. Jacobs, 167 F. Supp. 2d 606, 614 (S.D.N.Y. 2001).

To the extent that Appellant claims that she was unduly influenced by her attorney, it should first be noted that she has not identified the "advantage sought and obtained" for the attorney or someone in whom the attorney had an interest. Judge Drain, in any event, addressed this issue below, concluding that, to the extent there were any deficiencies on the part of Appellant's counsel, "those deficiencies do not give rise to a right on Ms. Yohannes' part to rescind the settlement agreement." (November 17, 2005 Tr. 54.) The record bears out this conclusion. As Judge Drain found, based on Appellant's multiple appearances before him, she was not "someone who caves in," that she has "her own mind and [she] speak[s] it," and that she was a person "perfectly capable of firing [her] lawyer." (Id. 60.) Judge Drain also noted that, if Yohannes had any issues with her attorney, "those are issues between her and her attorney that can be dealt with in connection with the attorney's fees and/or an affirmative claim that she believes she has against the attorney. But they cannot be used under the circumstances that I have observed, to permit Ms. Yohannes to rescind the agreement that she entered into on the 28th of July." (Id. 54.) Judge Drain's holding that there was no undue influence on the part of Yohannes' attorney sufficient to warrant rescission of the settlement agreement is supported by the record and the case law, and is affirmed.

Regarding Appellant's charges of undue influence/misrepresentation on the part of DeBell, Judge Drain explicitly found that there was "no fraud or misrepresentation by DeBell in the negotiation of the settlement," and that both parties had "entered into the settlement with the

knowledge that they had, and with no affirmative or any other sort of misrepresentations on the part of DeBell." (Id. 53.) Judge Drain noted, that "based on [his] observations of Ms. Yohannes and her conduct of [sic] the hearing on her own behalf on July 28th, that she was fully informed and competent and fully focused on the issues [that she raised in her motion to rescind]." (Id. 54.) The Court finds nothing clearly erroneous in Judge Drain's findings regarding Appellant's charges of misrepresentation/undue influence on the part of DeBell and Appellant's attorney, and upon a de novo review of the law as outlined above, agrees that his determination was proper.

Application for Stay Pending Further Appeal

In her reply papers, Appellant requests that the Court impose a further stay for twenty business days in the event this Court rejected her contentions on appeal. Appellant has not proffered a supersedeas bond.

A party requesting a discretionary stay pending appeal must demonstrate: (1) a substantial possibility, although less than a likelihood, of success on the merits; (2) irreparable injury if a stay is denied; (3) no substantial injury to other parties if the stay is issued; and that (4) the public interest favors a stay. See Mohammed v. Reno, 309 F.3d 95, 100 (2d Cir. 2002); Bijan-Sara Corp. v. Federal Deposit Ins. Corp., 203 B.R. 358, 360 (2d Cir B.A.P. 1996). If the party seeks the imposition of a stay without a bond, the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement. De La Fuente v. DCI Telecommunications Inc., 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2004).

As noted above, the Court initially rejected Appellant's application for a stay pending this appeal. Having thoroughly reviewed the parties' contentions and having found no error in the Bankruptcy Court's determination, the Court finds any further stay unwarranted. Appellant has

demonstrated no substantial possibility of success and, in light of her many years of payment-free occupancy of the premises at issue, the balance of hardships tips decidedly in Appellee's favor and no societal interest would be served by such a stay. Accordingly, her stay application is denied.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's November 17, 2006, decision denying Appellant's motion to rescind her settlement agreement with DeBell Residential, LLC is affirmed. Appellant's application for a stay pending further appeal is denied. The Clerk of Court is respectfully requested to close this case.

SO ORDERED.

Dated: New York, New York
       July 17, 2007

_____
LAURA TAYLOR SWAIN
United States District Judge